Mr. Justice Wylie
delivered the opinion of the court:
This action was brought by the plaintiff as indorsee against the defendant as maker of a note, of which the following is a copy:
*266 $2,000.] “ Detroit, January 1,1856.
Four years after date I promise to pay to tlie' order of David W. Bussell two thousand dollars, with annual interest at eight per cent., and current exchange on N. Y. Yalue received.
ALFRED BUSSELL.”
[Indorsed:] “ Pay Edward Bussell or order.
MARY F. BUSSELL,
Executrix.”
David W. Russell, the payee, was a citizen of Alabama, and Alfred Bussell was a citizen of Michigan, at the date of the note. The former died in the year 1863, at his residence, and subsequently, but during the war, the widow iudorsed the note, in blank, and sent it by the hand of a person coming North, to be delivered to the plaintiff, her son, who was and still is a citizen and resident of Kansas; and this was accomplished.
According to the bill of exceptions, there would be but one question for us to decide in this ease, namely, whether the indorsement upon this note made within the rebellious territory, and its subsequent transmission across the lines by the medium of a messenger, and its delivery to the indorsee, constituted such commercial intercourse as was unlawful at that time. For, if such was the fact, the indorsement was void, and the holder had no right to sue upon the note in his own name.
But by a stipulation between the counsel, it has been agreed that “ all the questions arising under the note may be considered and decided by the court as if incorporated in said bill of exceptions.”
And the first question which arises upon the face of the note is as to the authority of Mary F. Bussell, executrix, to indorse the note. The note on its face is payable to the order of David W. Bussell. The testimony shows that he died in 1861, and that his widow acted for some time afterward as sole executrix of his will. But that is not the way to prove authority given by a will. The plaintiff went to the trouble and expense of taking three depositions at Zainesville, Alabama, for the purpose mainly of establishing this one *267 fact by witnesses, examined ex parte and without notice, under the 30th section of the act of 1789. If the will conferred the power, and was not set aside for any cause, a copy duly authenticated or proved should have been produced. The fact that no such proof, so easily obtained, was procured, might well excite suspicion that there was a purpose in withholding it. In any view, however, the authority to make the indorsement can be proved only from the will itself, or an authenticated or proved copy.
The next question arising on the face of the note, is whether it is an instrument negotiable, so that an indorsee may maintain an action upon it in his own name.
Its promise is to pay $2,000 with annual interest at the rate of eight per cent., and current exchange on New York.
There was no evidence at the trial to show what was the legal rate of interest in Michigan, where the note was made, and where it was also payable, so that we cannot say that the note is on its face usurious.
But in order- to constitute negotiability, a promissory note ought, upon its face, to be for the payment of a sum of money certain as to amount. In Philadelphia Bank vs. Newkirk, 2 Miles R., 442, the note contained these words: “current rate of exchange to be added,” and they were held to exclude negotiability. The rule that the amount must be certain is laid down in all the books, so that no authority on the point is here deemed necessary. Had the note been made payable in New York, the payee or the maker thereof would have had the benefit of the exchange at the maturity of the note, as the rate might be in favor of the one place or the other at that time, and the transaction might not have been objectionable.
The present case is different. The’ note in question was made at Detroit, and was payable in Detroit, with eight per cent, interest annually,, and current exchange on New York. So that had it happened, at the maturity of the note, that exchange was in favor of Detroit and against New York, the maker could have had no advantage from that circumstance, for he must notwithstanding pay the whole sum, with interest. If the transaction be clear of fraud upon the law, there is no objection to making a note payable at a different place *268 from that where it was made, and this is a very common form of mercantile business; for non constat that the stipulation may not turn out to be favorable to the debtor, according as the rate of exchange may be between the two places. But the present is not such a case; the note in question was payable in Detroit, and if exchange on New York had at its maturity been in favor of Detroit, the maker must still have paid the whole; but if, on the contrary, the rate of exchange had been the other way, he would have been obliged to pay the exchange, whatever it might be, in addition to the amount of the principal and interest.
The note in question is one of very uncommon form, and it seems to us a very objectionable form of paper. What would be thought of it by the courts if a note were made payable in New York, with legal interest, and exchange on London ? A person may draw his bill on London, or make his note payable in London, if he choose, and it would be liable to no objection. But to draw or make such paper for a certain sum, and rate of interest, with exchange on Paris or St. Petersburg, would be outside of all the recognized forms of business. This note is not, therefore, in our opinion, a negotiable instrument.
Grutacap vs. Woulluise, 2 McL. R., 581, is, we think, quite reconcilable with these principles. There is no report of the facts in that case except what is contained in the very brief opinion of the court. The note was made, and the transaction took place, in New York, but was made payable at the Detroit City Bank, with current rate of exchange on New York. It was in effect, therefore, nothing more than a note payable where it was made. It was made in New York and payable at Detroit, wnth exchange on New York. Nor does it appear in the case but that the action was in the name of the payee, in which case the point as to negotiability could not have arisen.
As to the question of the effect of the war upon the transaction, we think there was no error in the opinion of the court below. There was no evidence given by the plaintiff to show that the indorsement by Mrs. Russell was not one of a commercial character. To be sure she was the mother of the plaintiff, and we might entertain a private conjecture *269 that the note had been bequeathed to him by the will of his father; but we are absolutely without evidence upon that subject. Since the plaintiff has thus left us in darkness as to facts most important to the decision of his ease, we are obliged to assume, not only that he had no right to the note in question under his father’s will, but that its professed assignment grew out of some transaction for which it was the consideration, and in consequence was unlawful under the act of 13th July, 1861.
Had a copy of the will, duly proved or authenticated, been produced in evidence, and it had there appeared that the note in question had been left to the plaintiff by his father, and that the widow, Mary F. Russell, was executrix, and had pówer to indorse it over to the legatee to whom it belonged, the case would have presented an appearance very different from that it now presents, so far as it relates to this question under the non-intercourse act. The other objection, however, to the plaintiff’s recovery in this form of action, would have remained unaffected by such proof.
Judgment affirmed.